## Scott et al. v. Williamson.

(Decided March 6, 1931.)

WILLIS STATON for appellants.

W. K. STEELE and F. W. STOWERS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE LOGAN—Affirming.

The appellee instituted his action in the Pike circuit court against Tom Scott, one of the appellants, wherein he alleged that Scott employed him to furnish material and build a house, and that, in compliance with his contract, he did so, and that Scott accepted the house and took possession of it; that Scott paid him all that was due him under the terms of the contract, except a balance of $700, which he promised and agreed to pay, but that he failed to do so, and that the full sum of $700, with interest, was due him from Scott.

Will M. Smith, one of the appellees, came into court and filed an intervening petition, in which he alleged that he furnished Williamson building material to be used in

the erection of the house which he had contracted to build for Scott, and that it was the same material for which Williamson was seeking to collect in his action against Scott. He alleged that he furnished Williamson material of the value of $750 which he promised and agreed to pay, and that he had failed to pay any part of it. He then alleged that Williamson was insolvent, and that he was a nonresident of Kentucky, and that he had no property subject to execution. He alleged other Code grounds for an attachment, and prayed that he be made a party to the action and recover of Williamson the sum of $750, with interest, and that a general order of attachment issue, and that the money in the hands of Scott claimed by Williamson be garnisheed.

Scott came in and filed his answer, and made it a cross-petition against Smith. He denied that he was indebted to Williamson in any sum and in a second paragraph, he alleged that he settled with Williamson on the 6th day of November, 1926, and gave him a check for $300, in full settlement of the balance due on the contract for building the house, and that Williamson accepted the check and obtained the money on it. He alleged that Williamson purchased some of the material used in the erection of the house from Smith, and had failed to pay Smith, and that Smith had filed in the office of the Pike county court, a materialmen's lien against the house, and that, when he settled with Williamson, he (Scott) agreed to pay Williamson the sum of $300 and assume the payment of any sum that Williamson was indebted to Smith; that the indebtedness of Williamson to Smith was a lien against his property; that he agreed to pay Smith so that the lien against the property might be released; and that the agreement and settlement was fully understood by all of the parties. He alleged that he was still holding money to pay Smith, and that Williamson had failed and refused to make a settlement with Smith, so that the exact amount of the indebtedness might be ascertained, and for that reason he still held the money. He alleged that it was a part of the agreement when the settlement was made that Williamson and Smith should settle, and that he should pay the sum due Smith, and that he was still holding the money in his hands awaiting a settlement between Smith and Williamson. He did not mention the amount of money which he so held, but, on the whole record, it is apparent that the sum in his hands was $700. He owed it to Williamson, according

to the allegations in his answer, but Williamson had agreed that it should be paid to Smith in satisfaction of the claim which Smith had against Williamson. He asked that Smith be made a party defendant and required to come into court and answer, but Smith had already come into court by his intervening petition.

The court allowed the intervening petition of Smith to be filed, but, as he had no interest in the controversy at the time, the intervening petition should not have been filed, but, as Scott came in immediately and made him a party, it was not improper to treat his intervening petition as his pleading setting up his interest in the controversy.

In his reply, Williamson denied that he had made any settlement with Scott whereby it was agreed that Scott should pay Smith, or that he owed Smith anything. Much is said in briefs about the pleadings, and, while they are awkard, yet the issues are fairly presented. If there had been a settlement between Scott and Williamson, and Scott had agreed to pay any sum that Williamson was indebted to Smith, the only question for consideration was whether Williamson was indebted to Smith. If he was, and there had been such an agreement between Scott and Williamson, Scott should have paid to Smith any amount which Williamson was owing him, but, if Williamson was not indebted to Smith, the money, of course, should have been paid by Scott to Williamson. Scott was but a stakeholder awaiting the settlement between Smith and Williamson, and, as they had made no settlement, he still held the money.

The cause was referred to the master commissioner to hear proof and report his findings on all the issues raised by the parties. He made a report showing that Scott was indebted to Williamson in the sum of $700, with interest from September 15, 1926. Touching the claim of Smith against Williamson, he reported that the allegations of the intervening petition of Smith had not been denied, and suggested the taking of further proof on that branch of the case. A few days thereafter he filed a substituted report, apparently having discovered that the pleadings were made up, and in that report he found that Scott was indebted to Williamson in the sum of $700, and that the proof of Smith was not sufficient to establish any indebtedness of Williamson to him. Exceptions were filed to the commissioner's report, but they were overruled, and a judgment entered for

Williamson for the sum of $700, with interest, and the intervening petition of Smith was dismissed. Smith and Scott both appealed, but there is no apparent reason why Scott should have appealed from the judgment, as it is not legally material to him who eventually receives the $700 which he is owing to Williamson as a balance for the erection of his house.

Before the exceptions were disposed of Smith entered a motion supported by his affidavit, and the affidavit of his attorney asking that he be allowed to take additional proof, and that the cause be continued for that purpose. Counter-affidavits were filed, and the motion was briefed in the affidavits. The motion was not sustained, and that is the chief ground of complaint on this appeal. The depositions of the two witnesses mentioned in the affidavits were taken, although exceptions were sustained to them by the court. They are before us, and this court has examined these depositions to determine whether there was any prejudicial error committed by the court in his refusal to give Smith an opportunity to obtain the evidence of these witnesses. One of them, was D. A. Reed, who testified that he was present when the settlement was made between Williamson and Scott. He testified that the payment of $300 to Williamson was accepted in full by him for any amount that Scott was owing him, and that the remainder was to be paid to Smith to discharge a lien in favor of Smith against the property of Scott. Scott himself did not make any such claim either in his evidence or in his pleadings. He very clearly stated that he was to withhold the payment of the $700 until the controversy between Smith and Williamson should be determined. The evidence of Reed, if it had been admitted, contradicted the pleadings and the evidence of Scott himself, and there was nothing prejudicial to the substantial rights of either Scott or Smith caused by the failure to have this evidence considered.

The other witness, Speers, related only to transactions with Williamson concerning the quantity of lumber which was furnished, and all of these facts appeared in the record, not satisfactorily, but they were made no more satisfactory by the evidence of Speers. The evidence of Speers would not have aided Smith.

The commissioner found that the evidence produced by Smith was not sufficient to establish that Williamson was indebted to him. This finding was confirmed by the

circuit court. An examination of the evidence convinces us that the commissioner was correct in his findings. It appears that Williamson and Smith had been transacting business between themselves for many years, and they had kept their accounts loosely. Williamson had worked for Smith in many capacities, and Smith had paid him much. He claimed that Smith was still owing him about $1,200, but Smith claimed that Williamson had disposed of quantities of lumber while working for him, and that he should be charged with it. He did not know the exact amount, and did not attempt to do more than approximate it, and his approximation was largely based on hearsay. Williamson admitted that he obtained about 4,500 feet of lumber from Smith which went into the Scott house, but he testified that Smith was indebted to him at the time, and that he did not owe Smith anything for the lumber. It appears that there never was any settlement of accounts between Smith and Williamson, and probably could not be by any books or memoranda kept by them. It may be that Williamson is indebted to Smith, but there is no evidence in this record to establish it, but it is equally probable that Smith is indebted to Williamson, but there was no sufficient evidence to establish that fact, if there had been a pleading to support it. We refer to matters aside from the claim for $750 for lumber that went into the Scott house. There is no satisfactory proof as to the value, or quantity of lumber, produced by Smith, and the evidence of Williamson, much more definite and certain on that point, shows that he procured lumber that he used in the Scott house of the value of about $125. The court below did the best he could on the record before him, and the judgment is therefore affirmed.

Judgment affirmed.